UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON,

                        Plaintiff,

and

SOCORRO DIAZ SILVAS,
ROXANA RODRIGUEZ,
YESICA CABRERA NAVARRO,
YASMIN CABRERA NAVARRO,
and SAMANTHA MENDOZA,

                Plaintiffs-Intervenors,

      v.

HORNING BROTHERS, LLC, and
HERMILO CRUZ, in his individual
capacity and as a member of the
martial community of HERMILO
CRUZ and CLAUDIA SANCHEZ,

                Defendants.

NO. 2:17-CV-0149-TOR

ORDER GRANTING THE STATE
AND PLAINTIFFS-INTERVENORS'
MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

BEFORE THE COURT are Defendant Horning Brothers, LLC's Motion for

Summary Judgment (ECF No. 51); Plaintiffs-Intervenors' Motion for Partial

Summary Judgment (ECF No. 59); and State of Washington's Motion for Partial

Summary Judgment against Horning Brothers, LLC (ECF No. 62). These matters were heard with oral argument on September 6, 2018. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendant Horning Brothers, LLC's Motion for Summary Judgment (ECF No. 51) is **DENIED**; Plaintiffs-Intervenors' Motion for Partial Summary Judgment (ECF No. 59) is **GRANTED**; and State of Washington's Motion for Partial Summary Judgment against Horning Brothers, LLC (ECF No. 62) is **GRANTED.**

## BACKGROUND

On April 25, 2017, Plaintiff State of Washington filed this action against Defendants Horning Brothers, LLC and Hermilo Cruz for violations of Title VII of the Civil Rights Act of 1964 (Title VII) and the Washington Law Against Discrimination (WLAD). ECF No. 1. This action concerns allegations of discriminatory hiring and segregated employment practices because of sex, sexual harassment, retaliation, and aiding and abetting others in violation of the WLAD. *Id.* Plaintiff asserts these claims against Horning Brothers and its supervisor, Mr. Cruz. *Id.* at 5.

On June 15, 2017, the Court granted the Proposed Motion to Intervene for Plaintiffs-Intervenors who were employed by Horning Brothers, supervised by Mr. Cruz, and were allegedly subjected to sexual harassment, retaliation, and constructive discharge. ECF No. 10.

On July 18, 2018, Horning Brothers filed the instant motion for summary judgment, which Mr. Cruz joined. ECF Nos. 51; 58. Plaintiffs-Intervenors filed a motion for partial summary judgment, which the State joined. ECF Nos. 59; 65. The State also filed a motion for partial summary judgment against Horning Brothers, which Plaintiffs-Intervenors joined. ECF Nos. 62; 66.

## FACTS

The following are the undisputed facts unless otherwise noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court acknowledges the State and Plaintiffs-Intervenors' objections to Defendants' failure to file a statement of facts in accordance with Local Rule 56.1(b). ECF Nos. 75 at 9 n.3; 78 at 3-5. The Court also considers their objections that Defendants' declarations are merely conclusory and often conflict with statements made at deposition or in sworn written discovery responses. ECF Nos. 75 at 10-11; 78 at 5-7; 102 at 6-8; 103 at 4-7. The Court notes below when factual assertions are disputed and considers any conflicting statements and declarations. The Court emphasizes that it does not consider any conclusory statements or irrelevant rhetoric involving Defendants' shock and dismay over the allegations, as

these feelings are not pertinent to the issues currently before the Court. *See* ECF No. 51 at 8.

**A. Horning Brothers**

Horning Brothers is an agricultural company in Quincy, Washington that grows a variety of field crops. ECF Nos. 60 at ¶ 1; 63 at ¶ 1; 76 at ¶ 1; 79 at ¶ 1. Horning Brothers is owned by Allen and Greg Horning, who operate the company along with their father, Warren Horning, and his wife, Kathy Horning, through a group of farming, land holding, and asset management companies owned by members of the Horning family. ECF Nos. 60 at ¶¶ 5-10; 63 at ¶ 2; 76 at ¶ 2; 79 at ¶ 11.

Until March 2017, Horning Brothers only grew onions, and owned and seasonally operated an onion-packing shed. ECF Nos. 51 at 3; 60 at ¶ 3; 63 at ¶ 3; 76 at ¶ 3; 79 at ¶ 3. Each packing season ran from roughly October to March. ECF Nos. 51 at 3; 60 at ¶ 13; 63 at ¶ 4; 76 at ¶ 6; 79 at ¶ 13. It is disputed whether the Horning Brothers employed 20-25 or 27-40 seasonal workers. ECF Nos. 51 at 3; 60 at ¶ 14; 63 at ¶ 4; 76 at ¶ 7; 79 at ¶ 14. Horning Brothers had eight to ten year-round employees. ECF Nos. 60 at ¶ 11; 76 at ¶ 5; 79 at ¶ 12. The seasonal workforce spoke largely only in Spanish, but Defendants contend that approximately a third of the workers also spoke English. ECF Nos. 51 at 4; 60 at ¶

15; 63 at ¶ 6; 76 at ¶ 9; 79 at ¶ 15.  Allen, Greg, and Warren Horning do not speak Spanish.  ECF Nos. 51 at 4; 60 at ¶ 16; 63 at ¶ 7; 76 at ¶ 10; 79 at ¶ 16.

**B. Mr. Cruz**

Mr. Cruz is the Horning Brothers' foreman.  ECF No. 51 at 3, 5.  He worked full-time for Horning Brothers since June 2004, and Plaintiffs allege that he became the "Onion Shed Supervisor" in 2006 and remained in that role until March 2017.  ECF Nos. 60 at ¶ 18; 63 at ¶ 8; 76 at ¶ 11; 79 at ¶ 18.  Plaintiffs contend that Mr. Cruz was designated as the "Direct Supervisor" of each of the onion sorters.  ECF Nos. 60 at ¶ 19; 63 at ¶ 9; 76 at ¶ 12; 79 at ¶ 19.  They also assert that from at least 2012 to March 2017, Mr. Cruz was the only person designated as the "Onion Shed Supervisor," and Allen and Greg Horning were designated as the "Direct Supervisor[s]" for the "Shop" employees and Mr. Cruz.  ECF Nos. 63 at ¶¶ 9-10; 76 at ¶ 14; 79 at ¶ 19.  Mr. Cruz's ability to speak Spanish was an important factor and the Hornings relied on him to communicate with the onion sorters.  ECF Nos. 51 at 4; 60 at ¶ 22; 63 at ¶¶ 11-12; 76 at ¶¶ 15-16; 79 at ¶ 22.  Plaintiffs allege that Horning Brothers provided Mr. Cruz no training to be a supervisor when he became Onion Shed Supervisor.  ECF Nos. 63 at ¶ 13; 76 at ¶ 17; 79 at ¶ 26.

Defendants assert that Mr. Cruz is not a supervisor and did not have authority to hire, fire, promote, demote, discipline, or raise or reduce any

employee's pay or benefits.  ECF No. 51 at 5.  Defendants explain that Horning

Brothers had a sign-up sheet in the onion shed and workers who wanted to work

the next season would write their names and phone numbers on the sheet.  *Id.* at 4.

Allen and Greg Horning asked Mr. Cruz to call the workers on the sheet until they

had commitments from enough workers to fill their staffing needs.  *Id.*  Mr. Cruz

was directed to first contact those workers who had worked the previous season or

seasons, as Horning Brothers assumed those workers knew the job duties and

requirements.  *Id.* at 4-5.

While Defendants deny that Mr. Cruz had the authority to hire employees,

Plaintiffs-Intervenors allege that he had authority to hire seasonal onion shed

employees.  ECF Nos. 60 at ¶¶ 38-62; 79 at ¶¶ 223-42.  Plaintiffs-Intervenors also

argue that Mr. Cruz had the *de facto* authority to terminate seasonal onion shed

employees, authority to affect employees work hours, and authority to assign

employees' work positions in the packing shed.  ECF Nos. 60 at ¶¶ 63-86; 79 at ¶¶

243-65.

### C. Safety Meetings and Harassment Policy

Horning Brothers held periodic "safety meetings."  ECF Nos. 51 at 5; 63 at ¶

14; 76 at ¶ 210; 79 at ¶ 266.  Plaintiffs allege the agendas show that those meetings

primarily addressed employee safety and conduct rules to prevent workplace

injury.  ECF Nos. 63 at ¶ 15; 76 at ¶ 211; 79 at ¶ 267.  Item No. 11 on the agenda

stated, "Report any threats or harassment immediately to Warren, Greg, or Allen. **HARASSMENT OR THREATS TO OTHER WORKERS WILL NOT BE TOLERATED**." ECF No. 52 at 8 (Ex. B) (emphasis in original). This item was sometimes modified to include or exclude Kayla Cedergreen or Mr. Cruz. ECF Nos. 51 at 6; 63 at ¶ 17; 76 at ¶ 213; 79 at ¶ 281. Plaintiffs emphasize that this item was the sole written or verbal material identified by Horning Brothers as the harassment or discrimination policy applicable while the onion shed was in operation. ECF Nos. 63 at ¶ 20; 76 at ¶ 217; 79 at ¶ 273. They also note that Ms. Cedergreen, who speaks some Spanish, was only on the list from October 24, 2016 to February 17, 2017, less than four months. ECF Nos. 63 at ¶¶ 27, 29; 76 at ¶¶ 224, 226; 79 at ¶¶ 281, 283.

Allen or Greg Horning would read through the agenda in English and ask a bilingual employee to translate. ECF Nos. 51 at 6; 63 at ¶ 18; 76 at ¶ 214; 79 at ¶ 270. Plaintiffs state that Mr. Cruz or Mr. Cruz's former brothers-in-law, Jose and Arturo Garay, would often translate. ECF Nos. 60 at ¶ 23; 63 at ¶ 18; 76 at ¶ 214; 79 at ¶¶ 270-71. Plaintiffs allege that Mr. Cruz admits he did not interpret the safety meetings "word-for-word" and the Hornings had no way of knowing if the Spanish translation was accurate. ECF Nos. 63 at ¶ 22; 76 at ¶ 219; 79 at ¶¶ 277-78. They also assert that witness testimony confirms seasonal workers came away with vastly different understandings of what the Horning Brothers communicated

at those meetings. ECF Nos. 63 at ¶ 23; 76 at ¶ 220; 79 at ¶ 279. The meeting sheets were never provided to workers in Spanish. ECF Nos. 63 at ¶ 24; 76 at ¶ 221; 79 at ¶ 279. These meetings never directly addressed sexual harassment nor retaliation.

Plaintiffs allege that Horning Brothers first distributed an Employee Handbook in June 2017. ECF Nos. 63 at ¶ 32; 76 at ¶ 230. The handbook defines sexual harassment, contains a complaint procedure including a complaint form, promises a "thorough" and "confidential" investigation, identifies and prohibits retaliation, and is available in Spanish. ECF Nos. 63 at ¶ 33; 76 at ¶ 231. The handbook was issued after the onion packing operations had permanently ceased and was not distributed to any onion sorter. ECF Nos. 63 at ¶ 34; 76 at ¶ 232.

**D. Notice to Horning Brothers**

Defendants allege that in the 20 years Horning Brothers ran its onion packing operation, not a single employee ever reported an instance of sexual harassment to Greg Horning, Allen Horning, Warren Horning, Kayla Cedergreen, or Kathy Horning. ECF No. 51 at 7. Defendants state that when an employee had another kind of complaint, he or she would bring a bilingual co-worker to translate. ECF Nos. 51 at 7; 63 at ¶ 31; 76 at ¶ 228; 79 at ¶ 285. Defendants also note that all the employees were generally located within a small area of the onion shed with Mr. Cruz's wife, Claudia, along with her daughter and mother. ECF No. 51 at 4.

Plaintiffs-Intervenors emphasize that Claudia's mother and daughter worked only one season each. ECF No. 79 at ¶ 329.

Plaintiffs assert that Yesica Cabrera Navarro testified that she complained to Warren Horning about harassment by Mr. Cruz in December 2014, using Jose Garay as an interpreter. ECF Nos. 63 at ¶ 35; 76 at ¶ 233; 79 at ¶ 286. Warren Horning testified that he remembered having a conversation "with Jose and some lady," but could not recall what she was "upset about." ECF Nos. 63 at ¶ 37; 64-11 at 10 (Ex. 11); 76 at ¶ 235; 79 at ¶ 287. Yesica Cabrera Navarro testified that Warren Horning "said that if I was comfortable working there, I could stay. And that if I wasn't, then it was my decision." ECF Nos. 63 at ¶ 38; 64-13 at 17 (Ex. 13); 76 at ¶ 236. She left her employment within a month. ECF Nos. 63 at ¶ 39; 76 at ¶ 237; 79 at ¶ 297.

Horning Brothers allege that Warren Horning did not receive a sexual harassment complaint about Mr. Cruz from Yesica Cabrera Navarro. ECF No. 100 at 5. Horning Brothers argue that because she does not speak English, and thus she does not know if Jose Garay translated her sexual harassment claims to Warren Horning. *Id.* Horning Brothers emphasize that Jose Garay denied that Yesica Cabrera Navarro complained about sexual harassment. ECF Nos. 100 at 5; 100-6 at 5 (Ex. VI). Horning Brothers emphasize that in her Separation Questionnaire, she wrote that her reason for leaving was because of back pain and she had a hard

time staying late in the onion shed.  ECF Nos. 100 at 6; 100-2 at 43-44 (Ex. II).

Yesica Cabrera Navarro testified that she was not able to read the document as it

was in English at the time she filled it out, and that she did not know what she

wrote because she just wanted to leave.  ECF No. 100-2 at 43-44.  The night after

she quit, she sent a Facebook message to Jose Garay answering his question about

why she left work crying.  ECF Nos. 100 at 6; 100-6 at 6-7 (Ex. VI).  At his

deposition, Jose Garay stated that she said "her back was hurting and her leg, I

guess.  And Hermilo didn't let her take off."  ECF No. 100-6 at 7.  In the Facebook

message, Yesica Cabrera Navarro referred to Mr. Cruz as the boss.  *Id.*

Roxana Rodriguez de Alfaro filed a complaint against Horning Brothers on

August 14, 2015 with the Washington State Human Rights Commission (HRC),

alleging discrimination on the basis of sex and national origin.  ECF Nos. 63 at ¶

41; 64-27 at 2-5 (Ex. 27); 76 at ¶ 239.  Her complaint stated that she quit as a result

of the harassment by Mr. Cruz.  ECF Nos. 63 at ¶¶ 42-43; 64-27 at 3; 76 at ¶¶ 240-

42.  In August 2015, Greg Horning, Allen Horning, Kathy Horning, Kayla

Cedergreen, and Warren Horning received and reviewed the complaint.  ECF Nos.

63 at ¶ 44; 64-21 at 12 (Ex. 21); 76 at ¶ 242; 79 at ¶ 298.  On September 24, 2015,

Allen Horning provided a written "response" statement on behalf of Horning

Brothers and together with a statement by Mr. Cruz.  ECF Nos. 63 at ¶ 45; 64-28 at

2-6 (Ex. 28); 76 at ¶ 243; 79 at ¶ 300.  This statement identified Mr. Cruz as "the

supervisor in the onion packing shed." ECF Nos. 63 at ¶ 47; 64-28 at 3; 76 at ¶ 245; 79 at ¶ 302. The response related that upon receiving the complaint, "we immediately spoke to Hermilo 'Milo' Cruz. His statement is also included with my response. We have every reason to believe his version of events." ECF Nos. 63 at ¶ 48; 64-28 at 3; 76 at ¶ 246; 79 at ¶ 303. Plaintiffs emphasize that the response does not identify any other steps the Horning Brothers took to investigate or remedy the alleged discrimination. ECF Nos. 63 at ¶ 49; 76 at ¶ 247; 79 at ¶ 304. Plaintiffs note that Horning Brothers did not provide training to Mr. Cruz or to its workforce following the receipt of the complaint nor take any other action to address the issues alleged in the complaint. ECF Nos. 63 at ¶¶ 51-56; 76 at ¶¶ 249-54; 79 at ¶¶ 306-10.

On August 2, 2016, the State served a Civil Investigation Demand on Horning Brothers, notifying it that the State was investigating it for "sexual harassment and/or retaliation for opposing unfair employment practices." ECF Nos. 63 at ¶ 57; 64-29 at 2 (Ex. 29); 76 at ¶ 255; 79 at ¶ 311. Besides responding, Horning Brothers took no steps to investigate or remedy the alleged sexual harassment or retaliation between August 2, 2016 and March 2017 other than to speak to Mr. Cruz. ECF Nos. 63 at ¶ 58; 76 at ¶ 256; 79 at ¶ 312.

**E. Allegations Post-Dating Notice to Horning Brothers**

Defendants assert that Mr. Cruz denies that he engaged in the acts alleged

and no member of the Horning family "ever saw any hint of such behavior." ECF No. 51 at 8. Plaintiffs allege that the State has identified ten women who were sexually harassed by Mr. Cruz. ECF Nos. 63 at ¶ 65; 76 at ¶ 263. The alleged victims are Claudia Arballo, Yasmin Cabrera, Yesica Cabrera, Socorro Diaz Silvas, Rosaura Hernandez, Zoelia Isordia, Trinidad Ortega de Lopez, Samantha Mendoza, Roxanna Rodriguez de Alfaro, and Lizeth Rubio. ECF Nos. 63 at ¶ 66; 76 at ¶ 263. Nine of these women were deposed and testified to being subjected to offensive sexual comments, conduct, or touching by Mr. Cruz. ECF Nos. 63 at ¶ 67; 76 at ¶ 265. Horning Brothers did not take the deposition of Zoelia Isordia, the tenth victim identified by the State. ECF Nos. 63 at ¶ 68; 76 at ¶ 266. Five of the ten alleged victims testified that they experienced sexual harassment after Horning Brothers responded to the HRC complaint on September 24, 2015. ECF Nos. 63 at ¶ 69; 76 at ¶ 267.

### F. March 2017 Investigation

On February 10, 2017, the State notified Horning Brothers that it had been authorized to bring this lawsuit under Title VII and the WLAD. ECF Nos. 63 at ¶ 70; 76 at ¶ 268; 79 at ¶ 318. From March 2, 2017 to May 25, 2017, Horning Brothers conducted interviews of 20 current and former employees, including Mr. Cruz. ECF Nos. 63 at ¶ 71; 76 at ¶ 269; 79 at ¶ 319. Kayla Cedergreen and Kathy Horning took contemporaneous notes during the interviews and typed the notes up

"immediately after." ECF Nos. 63 at ¶ 73; 76 at ¶ 271; 79 at ¶ 321. According to

the interview notes, ten reported having witnessed, heard about, or been subjected

to sexual comments or touching by Mr. Cruz during their employment with

Horning Brothers, which included every one of the full-time employees who were

interviewed. ECF Nos. 63 at ¶ 74; 76 at ¶ 272; 79 at ¶ 322. Plaintiffs allege that

Horning Brothers did not discipline Mr. Cruz following these interviews. ECF

Nos. 63 at ¶ 75; 76 at ¶ 273; 79 at ¶ 323. Mr. Cruz is no longer the shed supervisor

because the Hornings closed the packing shed permanently, but Mr. Cruz still

works for Horning Brothers and Plaintiffs assert that he has not been disciplined in

any way for inappropriate sexual conduct. ECF Nos. 63 at ¶¶ 76-77; 76 at ¶¶ 274-

75; 79 at ¶¶ 324-25.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). For purposes of summary judgment, a fact is "material" if it

might affect the outcome of the suit under the governing law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" where the

evidence is such that a reasonable jury could find in favor of the non-moving party.

*Id.* The moving party bears the initial burden of showing the absence of any

genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  The burden then shifts to the non-moving party to identify specific facts

showing there is a genuine issue of material fact.  *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as

well as all rational inferences therefrom, in the light most favorable to the non-

moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court must only

consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764

(9th Cir. 2002).  There must be evidence on which a jury could reasonably find for

the plaintiff and a "mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.

**A. Title VII Claim**

The State and Plaintiffs-Intervenors assert a claim for sexual harassment in

violation of Title VII, as the alleged victims were subject to a hostile work

environment based on their sex.  ECF Nos. 1 at ¶ 35; 12 at ¶¶ 47-51.  Horning

Brothers, joined by Mr. Cruz (ECF No. 58), argue that they are entitled to

summary judgment on Plaintiffs' claim for sexual harassment under Title VII.

ECF No. 51 at 10.  Plaintiffs also move for summary judgment on this claim.  ECF

No. 59; 65.

Pursuant to Title VII, a plaintiff must make a *prima facie* case of a hostile

work environment by showing that:  "(1) she was subjected to verbal or physical

conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct

was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (citation omitted). The Ninth Circuit requires that "[t]he working environment must both subjectively and objectively be perceived as abusive." *Id.* (citation omitted). "Objective hostility is determined by the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.*

### 1. Defendants' Motion for Summary Judgment

Defendants allege that Mr. Cruz has "forcefully and specifically denied the allegations contained in the complaints." ECF No. 51 at 10. Defendants also assert that Mr. Cruz was not a "supervisor" whose actions may be presumptively imputed to Horning Brothers. *Id.* at 10-11. Defendants insist that most, if not all, of the Plaintiffs will be unable to establish that they were subjected to a hostile work environment due to sexual harassment. *Id.* at 11. They contend that Plaintiffs will be unable to provide evidence that the alleged harassment by Mr. Cruz should be imputed to Horning Brothers because none of the Plaintiffs ever reported the harassment to Horning Brothers "despite its explicit direction to all employees that they do so." *Id.* at 11-12.

The State responds that nine victims have testified to frequent and unwanted touching that offended or scared them, which defeats Defendants' summary judgment motion. ECF Nos. 75 at 12-13; 76 ¶¶ 18-161. The State asserts the victims testified that the harassment included unwelcome compliments, requests for phone numbers, dates, sexual pictures, and sex, as well as crude gestures, comments about sex, sexual dreams, and masturbation. ECF Nos. 75 at 13; 76 at ¶¶ 21, 23, 27-31, 38-40, 44, 56-59, 68-71, 73, 80-81, 84-92, 96, 98, 101, 117-20, 132-34, 143, 148, 150-52. The victims also allege that Mr. Cruz touched, rubbed, and grabbed them in tight spaces on the sorting line or outside near bathrooms where he would surprise them as they exited. ECF Nos. 75 at 13; 76 at ¶¶ 22, 25-26, 45, 52, 54, 61, 72, 75, 82, 97, 104, 109, 112-13, 122, 142, 153-54. The victims testified that this conduct was frequent, often occurring daily or almost daily. ECF Nos. 75 at 13; 76 at ¶¶ 21, 50, 55, 72, 80, 110, 133. They described the harassment as making them feel uncomfortable, offended, embarrassed, disgusted, humiliated, nervous, and scared. ECF Nos. 75 at 14; 76 at ¶¶ 25, 46, 52, 72, 77, 85, 96, 101, 125, 128, 131, 144. The State then argues that this evidence is more than sufficient for a reasonable juror to find objectively and subjectively offensive. ECF No. 75 at 14.

Plaintiffs-Intervenors assert that their testimony creates a genuine issue for trial because they testified that Mr. Cruz touched their bodies, buttocks, breasts,

and hips, pressed his penis into their bodies, grabbed them and kissed them. ECF Nos. 78 at 8; 79 at ¶¶ 30, 33-38, 64, 66, 73, 75, 100, 105-08, 149, 153, 158, 164-65, 172, 191, 194, 200. They allege that he made sexual comments and gestures, including propositioning them for sex or romantic relationships, commenting about their bodies and appearance, and asking them out. ECF Nos. 78 at 8; 79 at ¶¶ 31, 39-45, 68-73, 76, 97-98, 101, 103-04, 109-13, 115-20, 150, 157, 161-63, 168-69, 171, 190, 193, 196-97. Plaintiffs-Intervenors also emphasize that these acts occurred frequently. ECF Nos. 78 at 9; 79 at ¶¶ 32, 34, 67, 99, 115, 150, 189. Plaintiffs-Intervenors then conclude that a reasonable woman would have found Mr. Cruz's conduct created a hostile work environment. ECF No. 78 at 9.

Mr. Cruz replies that the facts alleged do not objectively add up to a hostile work environment because the alleged acts are not "hellish," "nightmarish," or "extreme" conditions. ECF No. 98 at 7. Mr. Cruz argues the work environment was also not subjectively abusive because some Plaintiffs socialized with Mr. Cruz and his wife outside of work. *Id.* at 8-10.

The Court agrees with the State and Plaintiffs-Intervenors that the overwhelming evidence, when viewed in the light most favorable to them, establishes a genuine issue of material fact. A reasonable jury could find that the alleged victims were subject to verbal and physical conduct of a sexual nature, which was unwelcome and created an abusive working environment. They

provide sufficient evidence of objective hostility that a reasonable person could perceive the workplace as hostile.  The Court then finds that Defendants fail to show the absence of any material fact in light of the victims' testimony of unwelcome sexual contact that made them uncomfortable, disgusted, humiliated, and scared.  The Court is not persuaded by Defendants' conclusory allegations that Plaintiffs would be unable to establish a claim for sexual harassment and Mr. Cruz's argument that because some Plaintiffs socialized outside of work with Mr. Cruz and his family at a birthday party means that they are unable to establish sexual harassment.  *See* ECF No. 8-10.  The Court then denies Defendants' motion to dismiss the sexual harassment claim in regards to Mr. Cruz's liability.

Additionally, the Court is not persuaded by Defendants' argument that because Mr. Cruz has denied he committed the alleged sexual harassment, it would be improper for the Court to rule on other issues that depend on sexual harassment being established.  ECF No. 73 at 4.  The State asserts that it is well-settled that a district court may grant summary judgment on a claim or defense to narrow the issues for trial.  ECF No. 102 at 9.  The State argues that it does not matter that Defendants dispute the facts underlying the harassment.  *Id.*  Plaintiffs-Intervenors contend that a court may determine an alleged harasser's authority regardless of whether the existence of a hostile work environment is disputed.  ECF No. 103 at 2.  Plaintiffs-Intervenors insist that if they prove at trial that Mr. Cruz created a

hostile work environment, the previous determinations of elements of liability will ensure a more just and speedy resolution of the case. *Id.* at 3. This Court agrees with Plaintiffs and finds that it may analyze each of the disputed claims and defenses without first making a decision on the alleged harassment so as to narrow the issues for trial, which is appropriate under a motion for summary judgment.

### 2. Plaintiffs' Motion for Partial Summary Judgment on the Vicarious Liability of Horning Brothers

Plaintiffs-Intervenors respond to Defendants' summary judgment motion by arguing that the undisputed facts demonstrate Horning Brothers is vicariously liable under Title VII for all of Mr. Cruz's harassment. ECF No. 78 at 11. Plaintiffs-Intervenors, joined by the State (ECF No. 65), also assert in their Motion for Partial Summary Judgment that Horning Brothers is vicariously liable as Mr. Cruz is a "supervisor" under Title VII. ECF No. 59 at 5.

The Court first addresses whether Mr. Cruz is a supervisor. The Supreme Court has determined that an "employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits."

*Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)).

First, Plaintiffs allege that Mr. Cruz is a supervisor because Horning Brothers gave him authority to hire. ECF No. 59 at 6. In pre-suit interrogatories, Horning Brothers recognized Mr. Cruz "has the authority to hire." ECF Nos. 59 at 7; 60 at ¶ 38. Horning Brothers also asserted that it has "given Hermilo Cruz the authority to hire employees during the onion packing season." ECF Nos. 59 at 7; 60 at ¶ 39. Horning Brothers admitted in their answers to Plaintiffs' complaints that Mr. Cruz shared authority with the owners to determine who would be hired the following season. ECF Nos. 59 at 7; 60 at ¶ 41.

Plaintiffs also contend that the hiring process for seasonal workers shows Mr. Cruz had authority to hire where interested workers signed up for employment on the "employee sign up list." ECF Nos. 59 at 7; 60 at ¶ 43; 51 at 4. Horning Brothers told Mr. Cruz how many workers to hire, and Mr. Cruz filled out those positions from those sign-up sheets. ECF Nos. 59 at 7; 60 at ¶ 44; 51 at 4. Plaintiffs emphasize that Mr. Cruz was part of the "final call" in determining which workers would be rehired and ultimately controlled who would be offered employment because he made almost every hiring offer to the season onion shed employees with no review or oversight by the Hornings. ECF Nos. 59 at 7; 60 at ¶¶ 40, 42, 45, 52.

Second, Plaintiffs insist that Mr. Cruz's authority to rehire former employees with little to no oversight by Horning Brothers gave him a *de facto* authority to terminate employment. ECF Nos. 59 at 8; 60 at ¶ 63. Plaintiffs assert that Mr. Cruz did not rehire a worker who complained about him to the Hornings or was considered a "troublemaker." ECF Nos. 59 at 8; 60 at ¶¶ 67-68. Employees were aware Mr. Cruz did no rehire women who complained, and they told Horning Brothers that they feared if they reported the harassment he would retaliate and not rehire them. ECF Nos. 59 at 8; 60 at ¶¶ 69-70.

Third, Plaintiffs argue that, at a minimum, the Horning Brothers effectively delegated the power to hire to Mr. Cruz because of their reliance on his substantial input and their admissions that Mr. Cruz shared authority with the owners to determine who would be hired. ECF Nos. 59 at 9; 60 at ¶¶ 41-42, 46-51. Pursuant to *Vance*, an employer likely relies on other workers who actually interact with the affected employee, and under those circumstances "the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." 570 U.S. at 447. Plaintiffs here then contend that the Hornings relied on Mr. Cruz because they could not speak Spanish and could not recognize almost any of their seasonal employees by name or face because "they all look alike." ECF No. 59 at 10-11; 60 at ¶ 49; 61-10 at 11

(Ex. J).  Whereas Mr. Cruz worked closely with the seasonal employees.  ECF Nos. 59 at 11; 60 at ¶¶ 21, 50.

Fourth, Plaintiffs argue that Mr. Cruz caused significant changes in employment status, including controlling employee hours, assigning and reassigning positions, and changing benefits.  ECF No. 59 at 11.  Plaintiffs emphasize that Mr. Cruz was the only person designated as the "Onion Shed Supervisor" in the company's employee records and submissions to the State.  ECF Nos. 59 at 12; 60 at ¶ 18.  Mr. Cruz and the Hornings affirmed to the employees that Mr. Cruz was in charge of the onion shed.  ECF Nos. 59 at 12; 60 at ¶¶ 24-25.  He had the authority to change work hours in the shed and to engage workers for additional time to clean after the usual packing shed hours, thereby actually giving more hours and wages only to certain employees.  ECF Nos. 59 at 12; 60 at ¶¶ 71-75.  Mr. Cruz had the authority to approve or deny requests for time off.  ECF Nos. 59 at 12; 60 at ¶¶ 76-79.  He could assign seasonal employees to positions on the packing line, including positions with the primary duty of removing rotten onions.  ECF Nos. 59 at 12; 60 at ¶¶ 80-86.

Defendants respond that Horning Brothers have denied that they granted Mr. Cruz supervisory authority.  ECF Nos. 73 at 5; 97 at 3.  Mr. Cruz has also denied that he had authority to hire, fire, promote, demote, discipline, raise, or reduce any worker's pay or benefits or set work hours.  ECF Nos. 73 at 5; 74 at ¶¶ 3-4; 97 at 3.

1  Defendants argue that actual or apparent authority can only come from Horning

2  Brothers and it does not matter what Mr. Cruz or any other party says about his

3  authority.  ECF No. 73 at 6.

4       The Court finds that Mr. Cruz is a supervisor.  In response to an

5  interrogatory, Horning Brothers stated:

6       Allen, Greg, and Warren have given Hermilo Cruz the authority to
        hire employees during the onion packing season as needed in order to
7       replace employees who have quit.  Hermilo is able to move employees
        to different positions in the packing shed due to reasons such as; the
8       changing quality or size of the onion crop, excessive talking between
        employees, or other distractions.
9

10  ECF No. 61-1 at 8 (Ex. A).  Horning Brothers clarify that Mr. Cruz does not have

11  the authority to fire employees, but only "the authority to hire, change hours

12  worked because of load orders, move employees to different locations of the onion

13  packing line due to changing crop conditions or conflicting personalities."  *Id.*

14       Warren Horning testified in a deposition that Mr. Cruz hired onion sorters

15  off of the sign-up sheet and they both decided who worked what positions on the

16  belt.  ECF No. 61-10 at 24 (Ex. J).  Warren Horning also noted that Mr. Cruz

17  approved requests for time off from workers in the shed.  *Id.* at 25-26.  He stated

18  that Mr. Cruz had a role in or was responsible for disciplining sorters.  *Id.* at 27.

19  Warren Horning agreed that Mr. Cruz was "part of that final call" to rehire

20  seasonal employees the next year.  *Id.* at 15.

1   In Horning Brothers' answer to the State's Complaint, Horning Brothers

2   "admits that as a Supervisor, Defendant Cruz helped to oversee operations at the

3   onion packing shed and had input and involvement in the hiring of seasonal

4   employees, the setting of work days and the making of job assignments."  ECF No.

5   15 at 2.  In Horning Brothers' answer to Plaintiffs-Intervenors' Complaint,

6   Horning Brothers admitted that:

> Defendant Cruz was a supervisor in the onion packing shed at all
> relevant times, but denies that Defendant Cruz was the supervisor.
> Defendant Horning Brothers admits that Defendant Cruz was a
> supervisor helped to oversee operations at the onion packing shed and
> had input and involvement in the hiring of seasonal employees, the
> setting of work hours and the making of job assignments.

ECF No. 23 at 2.  In Mr. Cruz's answer to the State's Complaint, he "admit[s] that

as a Supervisor, Defendant Cruz helped oversee operations at the onion packing

shed and had input and involvement in the hiring of seasonal employees, the

setting of work hours and the making of job assignments."  ECF No. 13 at 3.  Mr.

Cruz further admitted that "the owners and Defendants Cruz would determine who

would be offered work the following season based on the needs of the company."

*Id.*  Allen Horning's response to the HRC complaint also identified Mr. Cruz as

"the supervisor in the onion packing shed."  ECF No. 64-28 at 3 (Ex. 28).

    In their Motion for Summary Judgment, Defendants state that Allen or Greg

Horning asked Mr. Cruz "to call the workers on the sign-up sheet until they had

commitments from enough workers to fill their staffing needs." ECF No. 51 at 4. Yet, Defendants adamantly insist that Mr. Cruz did not have the authority to hire, fire, promote, demote, discipline, or raise or reduce any employee's pay or benefits. ECF Nos. 51 at 5; 52 at ¶ 4. In a supplemental declaration, Mr. Cruz asserts that he does not have this authority. ECF No. 74 at ¶¶ 3-4.

In light of the evidence and Defendants' own admissions, the Court is not persuaded by Defendants bare assertions that Mr. Cruz did not have supervisory authority. Defendants admit in all of their answers that Mr. Cruz is a supervisor. Even if Defendants' previous assertions of Mr. Cruz as supervisor is irrelevant, Horning Brothers still concede that Mr. Cruz had the authority to hire employees and move employees around the shed which constitutes supervisor authority under its "specific legal meaning." *See* ECF No. 97 at 3. Warren Horning also admitted that Mr. Cruz hired onion sorters from the sign-up sheet list, approved requests for time off, disciplined employees, and was part of the final call to rehire employees. While Horning Brothers asserted that Mr. Cruz did not have authority to fire employees, the Court finds this one action insufficient to overcome supervisor liability when Mr. Cruz still had the authority to hire, reassign, and change employees' responsibilities. These actions constitute a tangible employment action as they are significant changes in employment status. Defendants' conclusory assertion of non-liability is insufficient. The Court finds there is no genuine

dispute, and Mr. Cruz is a supervisor in light of Defendants' concessions and the overwhelming evidence in the record. The Court finds that Horning Brothers is then vicariously liable for the actions of Mr. Cruz as a supervisor. *See Vance*, 570 U.S. at 431.

## B. *Ellerth-Faragher* Defense

Defendants insist that they are entitled to summary judgment on their *Ellerth-Faragher* defense even if Mr. Cruz is a supervisor. ECF No. 51 at 12. The State responds that it is entitled to summary judgment on this defense and moves for summary judgment in a separate motion. ECF Nos. 75 at 14; 62 at 9. Plaintiffs-Intervenors respond that Defendants cannot establish this affirmative defense and join in the State's Motion for Partial Summary Judgment. ECF Nos. 78 at 12; 66.

The *Ellerth-Faragher* defense is an exception to the general rule that harassment committed by a high-level manager will be automatically imputed to the employer. *Ellerth*, 524 U.S. at 742; *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). To qualify for the defense, an employer must make a threshold showing that the affected employee has not suffered any tangible adverse employment action, such as discharge, demotion, or undesirable reassignment in connection with the harassment. *Ellerth,* 524 U.S. at 765. Once this showing has been made, the employer may avoid vicarious liability by proving: (1) that it

exercised reasonable care to prevent and promptly correct the harassing behavior

and (2) that the employee unreasonably failed to take advantage of preventative or

corrective opportunities provided by the employer or otherwise failed to prevent

the alleged harm. *Id.* The policy behind this defense is that an employer should be

able to avoid vicarious liability "in situations where it acts promptly to remedy

harassment." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001).

The *Ellerth-Faragher* defense only applies to harassment committed by an

employee's supervisor. *See Ellerth*, 524 U.S. at 765 (employer may seek to avoid

vicarious liability for "misuse of supervisory authority" perpetrated by a supervisor

"with immediate (or successively higher) authority over the employee"). As this

Court has determined that Mr. Cruz is a supervisor, the Court addresses

Defendants' affirmative defense below. Additionally, Defendants assert that none

of the Plaintiffs can show a tangible employment action because none were

reassigned to an inferior position, demoted, or fired. ECF No. 51 at 13. Plaintiffs

do not address whether a tangible adverse employment action occurred, and the

Court then assumes for the purposes of these motions that Defendants meet this

threshold requirement.

Here, Defendants argue summary judgment is appropriate on all of

Plaintiffs' hostile work environment claims. ECF No. 51 at 12. Defendants note

that they can establish the first element because they maintained an anti-

harassment policy, arguing that their policy was legally adequate as a matter of law because the seasonal workforce was small and the Hornings were available and interacted with the workers on a near daily basis.  *Id.* at 13-14.  Defendants insist that Plaintiffs failed to report Mr. Cruz's alleged harassment while they worked in the onion shed, thereby not allowing Horning Brothers the opportunity to eliminate or mitigate the harm.  *Id.* at 14.

In the State's Motion for Partial Summary Judgment, joined by Plaintiffs-Intervenors (ECF No. 66), Plaintiffs argues that Horning Brothers' harassment policy was ineffective because it failed to define sexual harassment or prohibit retaliation and it was unsuited to its Spanish-speaking workforce.  ECF No. 62 at 10-16.  Plaintiffs concedes that while a smaller employer's policy may be less formal than a larger employer's policy, an *Ellerth-Faragher* prerequisite for an employer of any size is a complaint reporting and resolution process that is effective and suitable to the employment circumstance.  ECF No. 62 at 11; *Faragher*, 524 U.S. at 806; Enforcement Guidance:  Vicarious Employer Liability for Unlawful Harassment by Supervisors, 1999 WL 33305874, at *15.

Plaintiffs insists that Horning Brothers' harassment policy was not an effective mechanism because it did not provide a definition of sexual harassment or provide a statement that retaliation will not be tolerated.  ECF Nos. 62 at 12; 102 at 11; *see Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1180 (9th Cir. 2001); *see*

*also Montero v. AGCO Corp.*, 192 F.3d 856, 862 (9th Cir. 1999). The harassment

policy was read aloud at safety meetings, but Mr. Cruz did not interpret the policy

word-for-word. ECF No. 62 at 12-13; 63 at ¶ 22. The policy stated, "Report any

threats or harassment immediately to Warren, Greg, or Allen. **HARASSMENT**

**OR THREATS TO OTHER WORKERS WILL NOT BE TOLERATED**."

ECF No. 52 at 8 (Ex. B) (emphasis in original). Plaintiffs emphasizes that this

policy does not refer to "sexual" harassment, let alone define it. ECF No. 62 at 13.

Plaintiffs asserts that this policy is insufficient as a "general nondiscrimination

policy [that] did not address sexual harassment in particular, and thus did not alert

employees to their employer's interest in correcting that form of discrimination."

ECF No. 62 at 13; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72-73 (1986);

*see also* 29 C.F.R. § 1604.11(f). Failure to identify or prohibit retaliation creates

the predictable "fear of losing [one's] job if [the victim] reports harassing

conduct." ECF No. 62 at 13-14; *Brandrup v. Starkey*, 30 F. Supp. 2d 1279, 1288

n.4 (D. Or. 1998); *see also* EEOC Guidance, 1999 WL 33305874, at *10 ("An

anti-harassment policy and complaint procedure will not be effective without [an

anti-retaliation] assurance.").

     Plaintiffs emphasize that Horning Brothers' onion shed workforce was

largely Spanish-speaking, but it did not provide a written harassment policy in

Spanish or take steps that its "safety meeting sheet" was interpreted accurately at

meetings. ECF Nos. 62 at 15-16; 102 at 12. Warren, Greg, and Allen Horning could not speak Spanish but were designated to receive complaints. ECF No. 62 at 16. Mr. Cruz was the only person who spoke Spanish designated to receive complaints. *Id.* Plaintiffs notes that Kayla Cedergreen could speak some Spanish and was briefly on the list of persons to whom employees could report harassment. *Id.* at 16 n.5. Horning Brothers did not provide or offer to provide interpreters, but an employee would need to find and bring her own interpreter. *Id.* at 16.

Second, Plaintiffs contends that Horning Brothers failed to exercise reasonable care to promptly correct sexually harassing behavior. ECF Nos. 62 at 17; 102 at 12-13. In August 2015, Roxana Rodriguez de Alfaro filed a detailed complaint against Horning Brothers with the HRC alleging sexual harassment by Mr. Cruz. ECF Nos. 62 at 18; 63 at ¶¶ 41-42. Plaintiffs emphasize that Horning Brothers merely spoke with Mr. Cruz, but conducted no investigation, interviewed no other employees, provided not training to Mr. Cruz or other employees, made no changes to its harassment policy or to Mr. Cruz's job duties, and did not discipline Mr. Cruz in any way. ECF Nos. 62 at 18-19; 63 at ¶¶ 49-56. After the State served an investigation subpoena citing "sexual harassment," Horning Brothers spoke to Mr. Cruz, but again conducted no investigation, provided no training, made no changes to its policies or Mr. Cruz's supervisory duties, and imposed no discipline. ECF Nos. 62 at 19; 63 at ¶¶ 58-64. On February 10, 2017,

the Attorney General's Office advised Horning Brothers of its intent to file suit and on March 2, 2017, Horning Brothers commenced an internal inquiry. ECF Nos. 62 at 19; 63 at ¶¶ 70-72. The State notes that this inquiry occurred seventeen months after it acknowledged receipt of the HRC complaint, which is not prompt corrective action. ECF Nos. 62 at 19; 63 at ¶¶ 71-72.

Defendants respond that *Faragher* and the EEOC guidelines specifically acknowledge that a small employer that regularly interacts with its employees and effectively communicates that harassment will not be tolerated need not even have a written harassment policy. ECF Nos. 73 at 8; 51 at 13; 97 at 6. Additionally, Defendants argue that Roxana Rodriguez de Alfaro's complaint was made six months after she quit, which cannot make Horning Brothers liable as a matter of law for every instance of sexual harassment that allegedly occurred after that complaint. ECF No. 73 at 8. Defendants insist that because the complaint alleged sexual harassment of only one employee who quit without report it to the Hornings, they handled the complaint appropriately given the importance of confidentiality and that they heard nothing further from the HRC on this matter. *Id.* at 9-10. Given the importance of confidentiality, Defendants assert that it would have been unreasonable for Horning Brothers to immediately interview all of their employees about the allegations. *Id.* at 10.

In response to Defendants' Motion for Summary Judgment, the State argues that regardless of the size of the employer or its workforce, a policy must be "effectively disseminate[d]" to employees, provide an "effective mechanism for reporting and resolving complaints of sexual harassment," and be "suitable to the employment circumstances." ECF Nos. 75 at 16; 102 at 10-11; *Faragher*, 524 U.S. at 806-09; EEOC Guidance, 1999 WL 33305874, at *15. The State and Plaintiffs-Intervenors also assert that Yesica Cabrera Navarro testified that she did report Mr. Cruz's harassment to Warren Horning in December 2015. ECF Nos. 75 at 17; 76 at ¶¶ 282-83; 78 at 14. Other workers were also aware she complained, that Horning Brothers did nothing to address the alleged harassment, and that any worker who complained was not rehired the following season. ECF Nos. 75 at 17; 76 at ¶ 276; 78 at 15.

The State argues that evidence of a reasonable fear of retaliation from reporting harassment is sufficient to defeat an *Ellerth-Faragher* defense on summary judgment. ECF No. 75 at 18; *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 n.24 (9th Cir. 2003) (The court cites Dr. Fitzgerald to show that "victims of sexual harassment may face considerable difficulty in reporting the wrongdoing or taking other affirmative steps to seek relief .... [I]n some cases, a victim's particular circumstances may render the failure to seek relief through the employer's available procedures objectively reasonable."). The State and

Plaintiffs-Intervenors note that victims and witnesses feared losing their jobs if they complained about Mr. Cruz, and they needed the work because there are few winter agricultural jobs available in Quincy. ECF Nos. 75 at 17; 76 at ¶ 279; 78 at 15. They emphasize Dr. Fitzgerald's opinion that a victim's decision to delay or not report is in line with what social scientists know about women's response to sexual harassment in the workplace. ECF Nos. 75 at 18; 76 at ¶ 281; 78 at 15.

In Plaintiffs-Intervenors' response to Defendants' Motion for Summary Judgment, they argue that Horning Brothers' policy does not meet the requirements of an effective anti-harassment policy because it fails to define sexual harassment, fails to provide any means for Spanish-speaking employees to bypass the harassing supervisor in complaining, fails to describe disciplinary measures the company may use in a harassment case, fails to provide a statement that retaliation will not be tolerated, and was not disseminated in Spanish except through the harasser's inaccurate interpretation. ECF No. 78 at 12-13. Plaintiffs-Intervenors emphasize that Defendants were notified of Mr. Cruz's harassing conduct in December 2014, August 2015, and August 2016. *Id.* at 13. Even if Horning Brothers is a small employer, Plaintiffs-Intervenors argue that size does not excuse a failure to stop sexual harassment once it is known to the employer. *Id.*

The Court finds that Horning Brothers failed to have a sufficient harassment policy–verbal or written, even though it may be a small employer. Defendants cite

*Faragher* that the employer of a small work force "might expect that sufficient

care to prevent tortious behavior could be exercised informally…." 524 U.S. at

808. Defendants also emphasizes the EEOC's Guidance, which states, "If [a small

business] puts into place an effective, informal mechanism to prevent and correct

harassment, a small employer could still satisfy the first prong of the affirmative

defense to a claim for harassment." EEOC Guidance, 1999 WL 33305874, at *15.

The EEOC explains that a small business may not need to disseminate a written

policy if it effectively communicated the prohibition and effective complaint

procedure at staff meetings. *Id.*

The Court finds that even as a small business owner, Horning Brothers fails

to have an effective mechanism to prevent and correct harassment. While Horning

Brothers disseminated a harassment policy at its safety meetings, this policy was

ineffective at communicating a prohibition of sexual harassment and an effective

complaint procedure. The policy does not mention sexual harassment or a ban on

retaliation, nor does the evidence show that the Hornings further clarified the

policy at the meetings.

The Hornings' communication of the policy was also ineffective as Mr. Cruz

often interpreted the policy to the mainly Spanish-speaking seasonal employees,

but not "word-for-word" and it is unclear if the employees actually understood the

policy. When asked if she remembered Mr. Cruz saying anything like Item No.

11, Roxana Rodriguez de Alfaro testified, "No, I don't remember that. He didn't speak about that, only about safety, but not about harassment." ECF No. 64-14 at 6 (Ex. 14). Yasmin Cabrera Navarro stated, "No, because what he said was that if any worker bothered you, you could report that person to the bosses. But I don't remember him saying if they're harassing you." ECF No. 64-12 at 6 (Ex. 14). Claudia Arballo also responded, "No, I don't remember that one …. We were just told that if there was a problem or something, that the father was there and Greg and Allen and Don Hermilo." ECF No. 64-16 at 5 (Ex. 16). Rangel Neri stated, "There were meetings conducted by the Hornings. At the meetings, they explained the workplace safety and behavior rules. Hermilo interpreted for them. I don't remember that they explained how one reports workplace discrimination or sexual abuse." ECF No. 61-28 at ¶ 6.

Yet, Horning Brothers asserts that Socorro Diaz Silvas, Yasmin Cabrera Navarro, and Roxana Rodriguez de Alfaro were aware of reporting procedures. ECF No. 97 at 7-8. Socorro Diaz Silvas testified that "not much was said" about Item No. 11. ECF No. 100-1 at 10 (Ex. I). Yasmin Cabrera Navarro stated that she remembered Item No. 11, but clarified that "we were never told, [i]f your foreman bothers you, then report it to your foreman so he can go with you to report it. I mean, there was no way to report it." ECF No. 100-3 at 16 (Ex. III). Roxana Rodriguez de Alfaro testified that Mr. Cruz did not speak about harassment, as

discussed above. ECF No. 100-5 at 10-11 (Ex. V). This "awareness of reporting procedures" does not show an awareness of reporting sexual harassment, especially harassment conducted by a foreman. *See* ECF No. 97 at 7-8.

This testimony is persuasive in showing that reading the policy at the safety meeting was an ineffective mechanism to prevent and correct sexual harassment, even under the more accommodating standard for small businesses. Many of the employees were not aware of a sexual harassment or discrimination policy and the mechanisms to report such harassment. Horning Brothers' reporting policy was also ineffective where alleged victims had to bring their own interpreter or speak to Mr. Cruz, as the Horning family did not speak Spanish. The victims were also not aware that there would be no retaliation for reporting, but evidence shows that Yesica Cabrera Navarro possibly suffered such retaliation as discussed below.

A small business owner is held to the same standard as any employer when attempting to correct alleged sexual harassment. The EEOC explains that if a complaint is made, a small business employer, "like any other employer, must conduct a prompt, thorough, and impartial investigation and undertake swift and appropriate corrective action where appropriate." EEOC Guidance, 1999 WL 33305874, at *15. Horning Brothers failed to act promptly after being notified of the alleged harassment by Roxana Rodriguez de Alfaro and possibly Yesica Cabrera Navarro. The Court is not persuaded by Defendants' argument that

merely because Roxana Rodriguez de Alfaro filed a complaint after leaving their employment means that Defendants are not liable for any alleged sexual harassment. *See* ECF No. 73 at 9-10. Given that Defendants were then on notice of Mr. Cruz's alleged sexual harassment, they could have taken prompt action to correct the harassing behavior. *See* ECF No. 102 at 14. While the complaint only involved one alleged victim who was no longer employed by Horning Brothers, the alleged harasser was still employed by Horning Brothers and Defendants are then not excused from taking prompt corrective action besides merely speaking with Mr. Cruz. The importance of confidentiality does not preclude Defendants from clarifying their harassment policy to their employees, training their employees, or investigating the matter further. *See id.* at 15. The Court is then not persuaded that Defendants were not required to take any reasonably prompt corrective behavior when they were at least aware of the allegation by Roxana Rodriguez de Alfaro and also possibly aware according to Yesica Cabrera Navarro's complaint when she was still employed by Horning Brothers.

The overall purpose of the *Ellerth-Faragher* defense is to avoid vicarious liability where an employer acts promptly to remedy harassment. The evidence shows that Horning Brothers took no action to remedy the alleged sexual harassment besides speaking to Mr. Cruz regarding the HRC complaint. This defense is meant to encourage employers to adopt anti-harassment policies, which

1  Horning Brothers failed to do as their discrimination policy and reporting

2  mechanism were ineffective in addressing and preventing sexual harassment.

3  There are no disputed material facts precluding summary judgment on this issue.

4  Accordingly, the Court finds the *Ellerth-Faragher* defense inapplicable and

5  inappropriate where Horning Brothers' policy and actions were clearly insufficient

6  to prevent and address the alleged sexual harassment.

7  **C. WLAD**

8  Plaintiffs assert a claim for hostile work environment under RCW 49.60.

9  ECF Nos. 1 at ¶ 41; 12 at ¶¶ 56-60. All parties seek summary judgment on this

10 claim. ECF Nos. 51 at 15; 59 at 13; 65. WLAD has the same material factors for

11 employment discrimination based on sex as Title VII. *See Antonius v. King Cty.*,

12 153 Wash.2d 256, 261 (2004). The elements of a prima facie case under RCW

13 49.60 are: "(1) [t]he harassment was unwelcome, (2) the harassment was because

14 of sex, (3) the harassment affected the terms and conditions of employment, and

15 (4) the harassment is imputable to the employer." *Id.* (citing *Glasgow v. Georgia-*

16 *Pac. Corp.*, 103 Wash.2d 401, 406-07 (1985).

17 Here, Defendants argue that Plaintiffs cannot establish that the alleged

18 harassment "affected the terms and conditions of … employment." ECF Nos. 51 at

19 15; 97 at 10-11; *Sangster v. Albertson's, Inc.*, 99 Wash. App. 156, 162 (2000).

20 Defendants also contend that Plaintiffs cannot establish that the alleged harassment

should be imputed to Horning Brothers, citing their arguments discussed above regarding the *Ellerth-Faragher* defense. ECF No. 51 at 16. Defendants deny that Mr. Cruz is a manager. ECF No. 97 at 3. The State responds that the Washington Supreme Court has declined to extend the *Ellerth-Faragher* defense to the WLAD. ECF No. 75 at 19.

Plaintiffs-Intervenors, joined by the State (ECF No. 65), seek summary judgment and argue that Horning Brothers is strictly liable under the WLAD for Mr. Cruz's conduct as a manager. ECF No. 59 at 13. Plaintiffs argue that harassment is imputed to the employer under the WLAD where an owner, manager, partner, or corporate officer personally participates in the harassment. ECF No. 59 at 14; *DeWater v. State*, 130 Wash.2d 128, 135 (1996). Plaintiffs request that the Court find Mr. Cruz was a manager under the WLAD, whose conduct is imputed to Horning Brothers. ECF No. 59 at 14.

There are two categories of harassment which can be imputed to an employer. *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 362 (2012). In the first category is harassment committed by "an owner, partner, corporate officer, or manager." *Id.* Once established, this type of harassment is automatically imputed to the employer. *Glasgow*, 103 Wash.2d at 407. In the second category is harassment committed by lower-level supervisors and co-workers. *Davis*, 171 Wash. App. at 362. This latter type of harassment can be imputed to the employer

only if the employer:  (1) authorized, knew of, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action.  *Id.*  The purpose of maintaining these two categories of harassment is to "distinguish[ ] between, on one hand, the class of persons so closely connected to the corporate management that their actions automatically may be imputed to the employer and, on the other hand, the employee's supervisors and co-workers whose actions alone may not be imputed directly to the employer."  *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 853-54 (2000).

Courts have previously found that whether a person qualifies as an owner, partner, corporate officer, or manager depends on whether the alleged harasser is of a high enough level to be considered as the employer's "alter ego."  *Washington v. Boeing Co.*, 105 Wash. App. 1, 12 (2000); *Francom*, 98 Wash. App. at 855 (citing *Ellerth*, 524 U.S. at 758).  Yet, this Court agrees with the Plaintiffs' argument that the Washington Supreme Court has clarified that a manager for purposes of the WLAD is a person "who ha[s] been given by the employer the authority and power to affect the hours, wages, and working conditions of the employer's workers."  *Robel v. Roundup Corp.*, 148 Wash.2d 35, 48 n.5 (2002).  The Washington Court of Appeals in *Boeing* relied on cases prior to *Robel* for its alter ego theory and thus this theory is no longer controlling.  *Boeing Co.*, 105 Wash. App. at 12 n.23 (citing *Francom*, 98 Wash. App. at 854-56; *Ellerth*, 524

U.S. at 758).  Defendants also concede that the test for supervisor under Title VII and the test for manager under WLAD are similar, citing to the definition of manager in *Robel*.  ECF No. 73 at 5; *Robel*, 148 Wash.2d at 48 n.5.  As neither party disputes the applicability of *Robel*, this Court analyzes whether Mr. Cruz is a manager under the definition set forth by the Washington Supreme Court in *Robel* rather than the more restrictive alter ego theory.

Here, Plaintiffs argue that Mr. Cruz is a manager because his authority to hire and rehire indisputably affects the hours, wages, and working conditions of onion sorters.  ECF No. 59 at 18.  Mr. Cruz also had control over employee schedules, specifically start times, work schedules, and who could work additional hours cleaning after the usual shift.  ECF Nos. 59 at 19; 60 at ¶¶ 71-74.  Workers complained to Horning Brothers that Mr. Cruz offered additional hours only to preferred workers.  ECF Nos. 59 at 19; 60 at ¶ 75.  Mr. Cruz also had authority to approve leave.  ECF No. 59 at 19; 60 at ¶¶ 76-79.  Plaintiffs contend that Mr. Cruz had the power and authority to affect working conditions because he assigned workers to positions on the line and had the power to move them to new positions in the shed.  ECF Nos. 59 at 19; 60 at ¶ 80.  He had supervisory duties in the shed and instructed and reviewed employee work.  ECF Nos. 59 at 19; 60 at ¶¶ 20-21.  Mr. Cruz controlled the information employees received because the Hornings

relied on him to communicate and interpret the "safety meetings."  ECF Nos. 59 at 19; 60 at ¶¶ 22-23.

As Defendants concede that supervisor and manager tests are similar, the Court finds that Mr. Cruz is a manager under WLAD as the Court has previously determined that he is a supervisor under Title VII.  The evidence shows that Mr. Cruz had the ability to hire employees, control their time off, control where they would work in the onion shed, and control their additional hours.  Mr. Cruz is then a manager and strict liability applies.

The question remains whether the *Ellerth-Faragher* defense applies to the WLAD.  Plaintiffs argue that the Washington Supreme Court has never adopted this affirmative defense and requests this Court find that the defense is not available to Horning Brothers under WLAD.  ECF Nos. 59 at 20-21; 103 at 11. This Court agrees with Plaintiffs that the defense has never been recognized by the Washington Supreme Court, but it has been expressly adopted by Division III of the Washington Court of Appeals.  *See Sangster v. Albertson's, Inc.*, 99 Wash. App. 156, 163-167 (2000); *see also* ECF No. 97 at 6.  In dicta, Division I of the Washington Court of Appeals considered the analysis in *Sangster* and stated:

> To the extent that *Sangster* does alter the analysis in hostile work environment claims, it does so by applying federal law that Washington courts typically regard as persuasive in employment discrimination cases.  While it seems likely that our Supreme Court, in an appropriate case, will adopt and follow the new federal precedent, in the absence of such a decision we are hesitant to follow

1  Division III in presuming that Washington's law is other than as
2  stated in Glasgow.

3  *Barker v. Botting*, 121 Wash. App. 1030, *5 (2004).

4      This Court finds that it need not determine whether the affirmative defense

5  applies.  As previously discussed, the defense does not protect Defendants under

6  Plaintiffs' Title VII claim and, as WLAD's claim is similar, the Court finds that the

7  defense would also not preclude summary judgment here even if it applied.

8  Accordingly, the Court grants summary judgment in favor of Plaintiffs and finds

9  that Horning Brothers is strictly liable under the WLAD for the actions of Mr. Cruz

10  as manager.

11  **D. Retaliation**

12      Plaintiffs allege a claim for retaliation in violation of Title VII and the

13  WLAD.  ECF Nos. 1 at ¶¶ 37, 43; 12 at ¶¶ 70-72.  Defendants move for summary

14  judgment on these claims.  ECF Nos. 51 at 16; 58.

15      The Ninth Circuit has recognized that the framework used to analyze Title

16  VII retaliation claims applies equally to the WLAD.  *Stegall v. Citadel Broad. Co.*,

17  350 F.3d 1061, 1065 (9th Cir. 2003).  To establish a *prima facie* case of retaliation

18  under this framework, a plaintiff must demonstrate that:  "(1) she engaged in a

19  protected activity, (2) she suffered an adverse employment action, and (3) there

20

was a causal link between her activity and the employment decision." *Id.* (citation omitted).

To satisfy the adverse employment action prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). A causal link can be shown by direct evidence or inferred from circumstantial evidence, such as the temporal proximity between the protected activity and the employment decision and whether the employer knew that the employee engaged in protected activities. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *See Ramirez v. Olympic Health Mgmt. Sys., Inc.*, 610 F. Supp. 2d 1266, 1284 (E.D. Wash. 2009). If the defendant states a valid reason, the burden shifts back to the plaintiff to demonstrate that the reason was merely a pretext. *Id.* Only then does a plaintiff's case survive summary judgment. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

1    Here, Defendants assert that Plaintiffs cannot show any of these elements.

2    ECF No. 51 at 16.  First, Defendants insist that Plaintiffs cannot show they

3    engaged in protected activity, such as complaining to the Hornings, because none

4    of them complained.  ECF Nos. 51 at 6; 97 at 10.  Second, Defendants allege that

5    Plaintiffs cannot show that Horning Brothers ever subjected them to any adverse

6    employment action since none of them were ever reassigned to an inferior position,

7    demoted, or terminated.  ECF No. 51 at 6.  Horning Brothers argues that Yesica

8    Cabrera Navarro cannot prove that she was constructively discharged.  ECF No. 97

9    at 10.  Third, Defendants contend that Plaintiffs cannot show that a causal link

10   existed.  *Id.*  Defendants note that none of the Plaintiffs who quit before the end of

11   the packing season can prove that they were forced to quit because they reported a

12   hostile work environment to the Hornings because none ever did so.  *Id.*

13       Plaintiffs respond that Yesica Cabrera Navarro's complaint to Warren

14   Horning in December 2014 regarding Mr. Cruz's sexual harassment constitutes a

15   protected activity.  ECF Nos. 75 at 20; 76 at ¶¶ 282-83; 78 at 17; 79 at ¶¶ 125-36.

16   Yesica Cabrera Navarro testified that Warren Horning responded that if she was

17   comfortable working there, she could stay, and if she was not, she could make the

18   decision to leave.  ECF Nos. 64-13 at 17 (Ex. 13); 75 at 20; 78 at 17.  Mr. Cruz

19   was present during this conversation.  ECF Nos. 75 at 20; 76 at ¶ 285; 78 at 17; 79

20   at ¶¶ 130-32.  Within days of her complaint, Mr. Cruz removed Yesica Cabrera

Navarro from a work station he knew was tolerable for her back, given a recent injury, and transferred her to a work station that caused her pain. ECF Nos. 75 at 20; 76 at ¶ 287; 78 at 17; 79 at ¶¶ 133, 138; 80-3 at 69 (Ex. C). Mr. Cruz also subjected her to yelling and humiliation in front of other employees. ECF Nos. 75 at 20; 76 at ¶ 287; 78 at 17-18; 79 at ¶ 139; 80-3 at 69-70. Yesica Cabrera Navarro stated that she regretted reporting the harassment and felt she had no option but to quit to escape the intolerable conditions at Horning Brothers. ECF Nos. 75 at 20-21; 76 at ¶¶ 288-89; 78 at 18; 79 at ¶¶ 140-42; 80-3 at 68-69.

The State emphasizes that Defendants fail to present any evidence of a legitimate reason for her reassignment or public humiliation by Mr. Cruz, despite being aware of her testimony. ECF No. 75 at 21. Plaintiffs-Intervenors argue that a genuine dispute of material facts exists as to whether Yesica Cabrera Navarro engaged in protected activity, such as her testimony and testimony of other employees who were aware of her complaint. ECF Nos. 78 at 18; 79 at ¶¶ 53, 125-36, 182, 206, 215. Plaintiffs-Intervenors contend that the short time between her complaint, reassignment, and Mr. Cruz's verbal abuse indicate her protected activity was a motivating factor for the adverse action. ECF No. 78 at 18.

The Court finds there is a material question of fact as to whether Defendants retaliated against Yesica Cabrera Navarro for reporting Mr. Cruz's alleged sexual harassment. The disputed evidence shows that she reported the sexual harassment

to Warren Horning while Mr. Cruz was in the room, and was therefore aware of the complaint. Days later she was subjected to a transfer and alleged verbal abuse, likely constituting an adverse employment action. This short amount of time and Mr. Cruz's knowledge of the complaint likely creates a causal link. The Court is not persuaded by Defendants' argument that not a single Plaintiff reported sexual harassment when Yesica Cabrera Navarro asserts that she made a complaint in December 2014 and Warren Horning recalls having a conversation with Jose Garay and a female employee. ECF No. 64-11 at 10 (Ex. 11). While Horning Brothers argue that Yesica Cabrera Navarro complained about pain and not getting time off, this conflicting testimony creates a genuine issue of material fact and summary judgment is not appropriate. The Court finds there is a genuine issue of material fact whether Yesica Cabrera Navarro complained to Warren Horning and whether Mr. Cruz's actions constitute an adverse action because of this complaint. The Court denies Defendants' motion for summary judgment on Plaintiffs' retaliation claims.

**E. Wrongful Termination/Constructive Discharge**

Plaintiffs-Intervenors allege a claim for constructive discharge in violation of Title VII in regards to Roxana Rodriguez "by subjecting her to conditions so intolerable based on unwanted sexual touching and harassment that she was compelled to quit her job." ECF No. 12 at ¶ 53. They also assert a claim for

constructive discharge in violation of WLAD in regards to Yesica Cabrera

Navarro. *Id.* at ¶ 66. Defendants seek summary judgment on these claims. ECF

No. 51 at 17.

Federal case law describes constructive discharge as "an employee's

reasonable decision to resign because of unendurable working conditions."

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). "The inquiry is

objective: Did working conditions become so intolerable that a reasonable person

in the employee's position would have felt compelled to resign?" *Id.* If the answer

to this question is "yes," the employee may assert federal wrongful discharge

claims despite the fact that he or she was not formally discharged. *Id.*

Washington case law is in accord. To prove constructive discharge under

Washington law, an employee must show: (1) that the employer engaged in

deliberate conduct which made the employee's working conditions intolerable; (2)

that a reasonable person in the employee's position would be forced to resign; (3)

that the employee resigned solely because of the intolerable conditions; and (4)

that the employee suffered damages. *Allstot v. Edwards*, 116 Wash. App. 424, 433

(2003). Intolerable working conditions exist where an employee is subjected to

"aggravating circumstances or a continuous pattern of discriminatory treatment" on

the part of the employer. *Id.*

Further, courts applying Washington law must "presume [the] resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge." *Townsend v. Walla Walla Sch. Dist.*, 147 Wash. App. 620, 627 (2008). The employee may rebut this presumption "by showing the resignation was prompted by duress or an employer's oppressive actions." *Id.* at 627-28. Mere subjective dissatisfaction, however, is insufficient to overcome the presumption. *Id.* at 628.

As an initial matter, this Court rejects any argument by Defendants that Horning Brothers cannot be held liable for the actions of Mr. Cruz because the Court has already determined that Mr. Cruz was a supervisor and manager. *See* ECF No. 51 at 18. The Court then addresses Defendants' remaining arguments.

Defendants assert that Horning Brothers has never terminated an employee in the entire 20 year history of its onion packing operation. *Id.* at 17. Defendants contend that Plaintiffs cannot show that Horning Brothers deliberately made working conditions intolerable due to Mr. Cruz's alleged sexual harassment. *Id.* Defendants insist that they were unaware that either Yesica Cabrera Navarro or Roxanna Rodriguez de Alfaro were allegedly sexually harassed because neither reported it to the Horning Brothers prior to quitting. *Id.* at 18.

Plaintiffs respond that genuine issues of material fact preclude summary judgment because Yesica Cabrera Navarro testified that she had no other option but to quit after Horning Brothers disregarded her harassment complaint and Mr.

Cruz responded with verbal abuse and reassigning her work station. ECF Nos. 75 at 22; 76 at ¶¶ 282-90; 78 at 19; 79 at ¶¶ 97-120, 138-42. Plaintiffs-Intervenors also argue that a reasonable person faced with continued and unchecked harassment and retaliation would be forced to quit her employment, as Yesica Cabrera Navarro did quit and suffered damages of months without employment while she struggled to support her children. ECF Nos. 78 at 19; 79 at ¶¶ 142-45.

Roxanna Rodriguez de Alfaro testified that she felt she had no choice but to resign in light of Mr. Cruz's intolerable crude verbal comments, requests for her phone number and dates, and daily rubbing and squeezing of her butt because once her husband had resigned and was no longer present in the onion shed, Mr. Cruz's harassment seemed likely to escalate even further. ECF Nos. 75 at 22; 76 at ¶ 291; 78 at 19; 79 at ¶¶ 62-76, 85-88. Plaintiffs-Intervenors add that she endured months without being able to find work, suffered emotionally and economically as she struggled to provide for her children and family. ECF Nos. 78 at 20; 79 at ¶¶ 91-93.

Horning Brothers reply that Yesica Cabrera Navarro's deposition testimony fails to establish that she suffered a hostile work environment due to sexual harassment, let alone constructive discharge. ECF No. 97 at 4. Horning Brothers emphasize her separation questionnaire and Jose Garay's denial that she complained about sexual harassment. *Id.* at 4-5. In regards to Roxana Rodriguez

de Alfaro, Horning Brothers concedes that she testified to sufficient facts to establish sexual harassment and possibly constructive discharge. *Id.* at 5. Yet, Horning Brothers still argues that she had other reasons for quitting because her husband had an argument with Mr. Cruz and quit, she wrecked her car close to the time that she quit, and she considered returning to the onion shed in the future. *Id.* at 5.

The Court finds that Plaintiffs show a genuine issue of material fact as to whether Defendants constructively discharged Yesica Cabrera Navarro and Roxanna Rodriguez de Alfaro. Merely because Defendants assert that they have never terminated an employee does not preclude constructive discharge, as Plaintiffs-Intervenors may have felt compelled to leave due to their treatment. The Court is not persuaded that no Plaintiff complained about sexual harassment, as previously discussed Yesica Cabrera Navarro possibly complained to Warren Horning and Roxana Rodriguez de Alfaro filed an HRC complaint. While Horning Brothers deny that Yesica Cabrera Navarro reported sexual harassment, the conflicting testimony creates a genuine issue of material fact. The disputed evidence creates a material issue of fact as to whether these Plaintiffs-Intervenors suffered intolerable working conditions where a reasonable person would have felt compelled to resign in light of the testimony regarding unwanted touching and

1  comments.  Accordingly, the Court denies Defendants' request to grant summary

2  judgment on Plaintiffs' constructive discharge claims.

3  **F. Discriminatory Hiring and Employment Practices**

4  The State asserts a claim for discriminatory hiring practices in violation of

5  Title VII and the WLAD.  ECF No. 1 at ¶¶ 31, 39.  The State also alleges

6  segregated employment practices in violation of Title VII.  *Id.* at ¶ 33.  Defendants

7  argue they are entitled to summary judgment on Plaintiffs' claims of

8  discriminatory hiring and employment practices.  ECF No. 51 at 18.

9  Pursuant to Title VII, it is unlawful for an employer:  (1) "to fail to hire or to

10  discharge an individual, or otherwise discriminate against any individual …

11  because of such individual's … sex" or (2) "to limit, segregate, or classify his

12  employees or applicants for employment in any way which would deprive or tend

13  to deprive any individual of employment opportunities or otherwise adversely

14  affect his status as an employee, because of such individual's … sex."  42 U.S.C. §

15  2000e-2(a).  Under WLAD, it is an unfair practice for an employer "[t]o refuse to

16  hire any person because of … sex …."  RCW 49.60.180(1).

17  "[A] plaintiff establishes a *prima facie* violation by showing that an

18  employer uses 'a particular employment practice that causes a disparate impact on

19  the basis of … sex ….'"  *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (citation

20  omitted).  An employer may defend "by demonstrating that the practice is 'job

related for the position in question and consistent with business necessity.'" *Id.* (citation omitted). Yet, "a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.* (citation omitted).

Here, Defendants admit that most of the seasonal workers they hired were women because most of those who signed up and applied for seasonal work were women. ECF No. 51 at 19. Yet, they argue that Horning Brothers also hired men as seasonal workers in the onion shed. ECF No. 51 at 19; 97 at 10-11. Defendants assert that all the seasonal workers in the onion shed were paid and treated the same regardless of whether they were male or female. ECF No. 51 at 19-20.

Defendants also concede that Horning Brothers has employed up to ten full-time farm laborers for many years, all of whom are male. *Id.* at 20. Defendants argue that these full-time laborers operated heaving machinery and worked during the harvests. *Id.* They repaired and worked on structures, irrigation systems, and equipment. *Id.* Defendants note that some of full-time laborers also worked in the onion shed during the packing season, usually performing the heaving-lifting and stacking tasks. *Id.* Defendants assert that "no female has ever applied for or asked to be hired for a full-time position as a farm laborer with Horning Brothers," but

Horning Brothers would be amendable to hiring a female as a full-time farm laborer.  ECF Nos. 51 at 20, 53 at ¶ 6.

The State contends that Horning Brothers assigned women exclusively to the lowest-paid, seasonal work of sorting onions, where there was no escaping Mr. Cruz as their direct supervisor.  ECF No. 75 at 22.  The State argues there is significant evidence that Horning Brothers only hired women to sort onions and relegated them to that seasonal role, never affording them an opportunity to compete for year-round positions at higher pay and thousands of dollars in additional bonuses.  ECF Nos. 75 at 23; 76 at ¶ 294.  The State contends that Defendants offer no evidence that their practice of limiting women to sorting onions was "job related for the position in question and consistent with business necessity."  ECF No. 75 at 23-24; *Ricci*, 557 U.S. at 578.  The State insists that Defendants' citation to operating heavy machinery, working during the harvests, and repairing and working structures does not justify their failure to afford women seasonal workers the opportunity to compete for year-round positions.  ECF No. 75 at 24.

The Court agrees with the State and finds that it shows a dispute of material fact as to whether Defendants only employing women as seasonal workers where all of the full-time positions are held by men has a disparate impact on the basis of sex.  There is a genuine issue of material fact as to whether Defendants can

establish whether it is a job related practice or merely stereotyping.  The Court finds that Defendants fail to justify the alleged discriminatory hiring and gender separate employment practices.  The Court then denies Defendants' motion for summary judgment on these claims.

**G. Punitive Damages**

Plaintiffs assert they are entitled to punitive damages.  ECF Nos. 1 at ¶ 46; 12 at 16.  Defendants seek summary judgment.  ECF No. 51 at 21.  As an initial matter, the Court finds that punitive damages are excluded in cases brought under the WLAD.  *See Martini v. Boeing Co.*, 137 Wash.2d 357, 368 (1999).  Defendants allege that punitive damages are not recoverable under Washington law and the Court agrees.  ECF No. 51 at 21.  The Court then only considers Plaintiffs' claim for punitive damages under Title VII.

In order to recover punitive damages on their federal claims, Plaintiffs must prove that Defendants intentionally "engaged in a discriminatory practice … with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (internal quotation marks and citation omitted) ("terms 'malice' and 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.").

An employer may be liable for punitive damages when it "discriminate[s] in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536; *see also Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 515 (9th Cir.2000) (acknowledging some instances where intentional discrimination would not give rise to punitive damages such as when the employer is aware of the specific discriminatory conduct at issue, but nonetheless reasonably believed that the conduct was lawful). Yet, the Supreme Court has held that in the punitive damages context, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 545 (citation omitted).

Here, Defendants contend that given the utter lack of evidence that Horning Brothers was aware of the sexual harassment or that any of their employment practices were illegal under federal law, Plaintiffs' claims for punitive damages must be dismissed. ECF Nos. 51 at 21; 97 at 11. The State responds that Defendants did not take seriously and immediately address complaints of harassment, and took no corrective action after receiving at least three separate notices of harassment. ECF No. 75 at 25. The Horning Brothers allowed Mr. Cruz's harassment to continue unchecked. ECF No. 75 at 25. Plaintiffs-Intervenors also respond that they have established the essential elements for

1  intentional discrimination claims, creating a basis for punitive damages.  ECF No.

2  78 at 21.  Plaintiffs-Intervenors emphasize that the Horning Brothers were on

3  notice of Mr. Cruz's sexual harassment as early as August 2015 and took no

4  corrective action.  ECF No. 78 at 21; 79 at ¶¶ 9, 286-317.  They insist that

5  Defendants have no defense to punitive damages because Horning Brothers did not

6  implement an anti-discrimination policy in good faith and failed to remedy Mr.

7  Cruz's harassment.  ECF No. 78 at 21.

8      The Court determines that Plaintiffs may assert a claim for punitive damages

9  under Title VII.  As previously discussed, it is possible that Horning Brothers was

10  aware of the alleged sexual harassment because of the three complaints.  Horning

11  Brothers failed to address and investigate the complaints, as previously discussed.

12  Plaintiffs establish that there is a material question of fact as to whether Horning

13  Brothers knew that it discriminated in the face of the perceived risk that its actions

14  violate federal law.  Plaintiffs show that Horning Brothers may have not made a

15  good faith effort to comply with Title VII because they did not investigate or seek

16  to remedy these claims of sexual harassment, and made no changes to their

17  harassment policy or Mr. Cruz's supervisory position.  Plaintiffs create a genuine

18  issue of material fact as to whether Horning Brothers were malicious or recklessly

19  indifferent to Mr. Cruz's noticed and alleged sexual harassment when they failed to

20  take any action besides speaking with Mr. Cruz regarding the HRC complaint.

Defendants fail to show a good faith effort to comply with Title VII and it is then a question of fact as to whether they are vicariously liable for punitive damages in regards to Mr. Cruz's actions. Accordingly, the Court denies Defendants' request for summary judgment on Plaintiffs' punitive damages claim.

**H. Plaintiffs' Motions for Partial Summary Judgment**

The Court has already discussed and granted Plaintiffs-Intervenors' requests for summary judgment on their vicarious liability claim under Title VII by finding Mr. Cruz a supervisor, their strict liability WLAD claim as Mr. Cruz constitutes a manager, and that *Ellerth-Faragher* does not bar their WLAD strict liability claim. The Court then grants Plaintiffs-Intervenors' Motion for Partial Summary Judgment. ECF No. 59.

The Court has also already granted the State's request for summary judgment on Defendants' *Ellerth-Faragher* defense and the State's only remaining argument is that Horning Brothers is liable for any harassment occurring after it received actual notice of a sexual harassment complaint from the HRC. ECF No. 62 at 20. The State argues that the Court should, at a minimum, grant summary judgment on the issue of employer liability for all harassment occurring after September 24, 2015, when Horning Brothers received the HRC complaint. *Id.* As the Court has already found that Horning Brothers is liable for Mr. Cruz's actions as a supervisor, the Court need not address whether Horning Brothers would also

have company liability, even though it is likely that this liability would also attach. *Id.* at 20-25. The Court then finds that as Horning Brothers is already liable for Mr. Cruz's actions, the Court need not address this further claim for liability.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Horning Brothers, LLC's Motion for Summary Judgment (ECF No. 51) is **DENIED**.

2. Plaintiffs-Intervenors' Motion for Partial Summary Judgment (ECF No. 59) is **GRANTED**.

3. State of Washington's Motion for Partial Summary Judgment against Horning Brothers, LLC (ECF No. 62) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** September 11, 2018.

THOMAS O. RICE
Chief United States District Judge